# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6433 | **DATE** | 5/20/2002 |
| **CASE TITLE** | The Quizno's Corporation vs. Robert Kampendahl | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion And Order. Plaintiff's motion for preliminary injunction (15-1) is granted. Kampendahl is preliminary enjoined from operating a sandwich shop similar to Quizno's, including Bob's Deli, within five miles of his terminated Quizno's location in St. Charles, Illinois.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 21 2002 | |
| | Notified counsel by telephone. | | date docketed | 44 |
| | Docketing to mail notices. | | CDN | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/20/2002 | |
| | | 02 MAY 20 PM 1:57 | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

THE QUIZNO'S CORPORATION, )
)
Plaintiff, )
)
v. ) No. 01 C 6433
)
ROBERT KAMPENDAHL, ) Judge Rebecca R. Pallmeyer
)
Defendant. )

DOCKETED
MAY 21 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Quizno's Corporation ("Quizno's"), a sandwich franchisor, has brought this action against its former franchisee, Defendant Robert Kampendahl. Quizno's claims that Kampendahl's conduct constitutes not only a breach of the franchise agreement, but also trademark infringement and unfair competition in violation of the Lanham Act. Quizno's alleges that Kampendahl breached his Franchise Agreement ("Agreement") when, after termination by Quizno's on July 31, 2001, he subsequently opened a substantially similar sandwich shop in the same location as his previous Quizno's franchise on October 10, 2001. Plaintiff now seeks a preliminary injunction enforcing the terms of a non-competition clause in the Agreement. For the reasons set forth below, the court concludes that Quizno's has shown it is likely to succeed on the merits of its claim, will suffer irreparable harm if Kampendahl is permitted to continue operating the sandwich shop, and is therefore entitled to a preliminary injunction against Kampendahl.

## FINDINGS OF FACT

### The Relationship between Quizno's and Kampendahl

1. On July 12, 1994, Quizno's and Kampendahl entered into the Agreement allowing Kampendahl to operate a Quizno's sandwich franchise at 1552 E. Main Street in St. Charles, Illinois. (Franchise Agreement, Ex. A to Plaintiff's Renewed Motion for Preliminary Injunction ("Pl.'s Ren. Inj.").) In exchange for a Quizno's franchise and the opportunity to trade on Quizno's good

will, Kampendahl agreed to operate his franchised restaurant in "strict compliance with such specifications, standards, procedures, and policies" as required by Quizno's. (Franchise Agreement § 6.1.2.)

2. The Agreement between the parties laid out the appropriate procedures should termination of the Agreement occur. Specifically, in the event of a termination, Kampendahl agreed to cease using Quizno's trademarks and to "refrain from doing anything by word or act which may mislead anyone into believing" a connection still existed between him and Quizno's. (Franchise Agreement § 13.2.) Additional post-termination obligations under the Agreement included discontinuing the use of Quizno's trademarks, returning all supplies bearing the Quizno's name, discontinuing all advertising, deleting listings from the yellow pages, and discontinuing use of current telephone numbers. (*Id.*)

3. The Agreement between the parties also contained a provision restricting competition by Kampendahl upon termination of the agreement. The provision states in relevant part, "[i]n the event the Franchise is terminated through the default or a breach of this Agreement . . . the Franchisee and the principals hereinafter named shall not, for a period of two (2) years . . . have any direct or indirect interest . . . in any sandwich restaurant business located or operating (a) within five [miles[1]] of the Franchised Business if the Franchised Business is located on [sic] a metropolitan area . . . ."[2] (Franchise Agreement § 13.5.) The non-compete covenant signed by Kampendahl also acknowledged that any breach would result in irreparable harm entitling Quizno's to a preliminary injunction. (*Id.*)

---

[1] As noted during the status hearing before this court on September 4, 2001, the Franchise Agreement contained a typographical error that substituted five "rules" for five "miles." (Transcript of September 4, 2001 Hearing ("9/4/01 Tr."), at 10-11, Ex. E to Pl.'s Ren. Inj.)

[2] The Agreement also prohibits the operation of a sandwich shop within 20 miles if the restaurant is located in a rural or suburban area. During the status hearing on September 4, 2001, Quizno's stated in open court that only the five-mile restriction applied to Kampendahl and Kampendahl was therefore free to open a sandwich shop further than five miles from the original location. (9/4/01 Tr., at 8-11.)

2

4. Between January 1998 and July 31, 2001, Quizno's issued numerous Notices of Default to Kampendahl, primarily for operational problems ranging from repeated failures to comply with Quizno's standards and specifications to the use of unclean food equipment, unapproved food product, as well as safety, sanitation, and store image violations. (Declaration of Dominick R. Voso ("Voso Decl.") ¶¶ 6-7, Ex. B. to Pl.'s Ren. Inj.; Notice of Default, Ex. 1 to Pl.'s Ren. Inj.)

5. On July 31, 2001, Quizno's sent Kampendahl a Notice terminating the Agreement. The Notice reminded Kampendahl of his post-termination obligations and further reminded him of the covenant not to compete in the Agreement. (Notice of Termination of July 31, 2000, Ex. 6 to Plaintiff's Motion for Preliminary Injunction ("Pl.'s Inj.").)

**Kampendahl's Alleged Breach of his Post-Termination Obligations**

6. Kampendahl did not comply with his post-termination agreement to de-identify his former Quizno's franchise. As a result, on or around August 21, 2001, Quizno's filed a motion for a preliminary injunction to enjoin Kampendahl from infringing on Quizno's registered trademarks and service marks in violations of the Lanham Act, 15 U.S.C. § 1114(1), unfairly competing with Quizno's in violation of the Lanham Act, 15 U.S.C. § 1125(a), and breaching his post-termination obligations under the Agreement.

7. On August 29, 2001, this Court entered an Agreed Preliminary Injunction enjoining Kampendahl from the use of Quizno's trademarks and service marks, leaving breach of the non-compete agreement as the only matter left for adjudication from Quizno's original motion.

8. At a September 4, 2001 status hearing, Kampendahl's attorney requested an expeditious ruling with respect to the non-compete covenant in order to establish both parties' rights and responsibilities. (9/4/01 Tr., at 8.) Consistent with the request, the court set an abbreviated schedule for briefing what was believed to be a motion for judgment on the pleadings for a ruling by the court on December 13, 2001.

**Kampendahl's Opening of "Bob's Deli"**

9. Around October 10, 2001, before the court could rule on the non-compete covenant in the Agreement, Kampendahl opened Bob's Deli, a sandwich shop located in the same building as his previous Quizno's restaurant. (Declaration of Carl Curatola ("Curatola Decl.") ¶ 5, Ex. F to Pl.'s Ren. Inj.)

10. Bob's Deli closely resembles Quizno's in its menu and in the content of its sandwiches. For example, Bob's Deli serves the "Turkey Bacon Guac" which is made of the exact same ingredients as Quizno's "Turkey Bacon Guacamole" except that Bob's deli uses provolone cheese instead of mozzarella. (Bob's Deli Menu, Ex. G to Pl.'s Ren. Inj.; Quizno's Menu, Ex. H to Pl.'s Ren. Inj.) In some cases, the sandwiches at Bob's Deli follow Quizno's recipes while changing only the names of sandwiches. For example, while Quizno's calls a baked sandwich consisting of mesquite flavored chicken, bacon, cheddar cheese, tomato, lettuce, onion and ranch dressing a "Mesquite Chicken with bacon," Bob's Deli calls the exact same baked sandwich the "Texas Chicken." (*Id.*) In other cases, Bob's Deli adopts both Quizno's names and ingredient lists for sandwiches. For example, at both Bob's Deli and at Quizno's, a customer who orders the "Turkey Lite" will receive a baked sandwich consisting of turkey, lettuce, tomato and onion.[3] (*Id.*)

11. Bob's Deli uses the same ovens used by the former Quizno's restaurant, and continues to display the same neon "Oven Baked Subs" sign that was displayed while the restaurant operated as a Quizno's. (Curatola Decl. ¶ 6.)

**CONCLUSIONS OF LAW**

1. Because Quizno's trademark claims involve a federal question, this court has

---

[3] Kampendahl asserts that he is not using the same foods or sauces as Quizno's since he was "cut off" from all of Quizno's distributors. (Defendant's Sur-Reply in Opposition to Pl.'s Ren. Inj. ("Def.'s Sur-R"), at 17. He does not dispute, however, that the menu at Bob's Deli substantially resembles his previous Quizno's menu.

jurisdiction pursuant to 28 U.S.C. § 1331. The court has supplemental jurisdiction over the state law breach of contract claim pursuant to 28 U.S.C. § 1367. Venue properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

2. A party seeking a preliminary injunction must demonstrate that: (1) its case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001), citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the court is satisfied these three conditions have been met, then it must consider the irreparable harm the non-moving party will suffer if the injunction is granted. *Ty, Inc.*, 237 F.3d at 895. Finally, the court must consider the public interest in denying or granting the injunction. *Id.* The court then 'weighs' all four factors in deciding whether to grant the injunction, seeking at all times to 'minimize the costs of being mistaken." *Abbott*, 971 F.2d at 12, citing *American Hosp. Supply Corp. v. Hospital Prods., Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986).

**Likelihood of Success on the Merits**

3. In order for Quizno's to succeed on its breach of contract claim, it must show that the non-compete covenant at issue is likely to be enforced by the court. Although it is not initially clear whether statutes or common law will govern the issue, the terms of the Agreement provide that "[t]his Agreement and all documents delivered hereunder shall be deemed to be contracts under the laws of the state of Colorado and for all purposes shall be construed in accordance with such law." (Franchise Agreement § 19.2.)

4. Under Colorado common law, in order for a covenant not to compete to be valid, it must be reasonable both in terms of duration and geographical scope as determined by the facts of each case. *National Graphics Co. v. Dilley*, 681 P.2d 546, 547 (Colo. Ct. App. 1984); *Gibson v.*

*Angros*, 491 P.2d 87, 99 (Colo. Ct. App. 1971); *Alexander & Alexander, Inc. v. Frank B. Hall & Co., Inc.*, No. 88-A-1621, 1990 WL 8028, at *6 (D. Colo. Jan. 31, 1990). Further, the covenant cannot violate the terms of § 8-2-113 of the Colorado Revised Statutes, which provide in pertinent part that "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection . . . shall not apply to: (a) Any contract for the purchase and sale of a business or the assets of a business; (b) Any contract for the protection of trade secrets." COLO. REV. STAT. ANN. § 8-2-113 (2001). *See also Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 794 (Colo. Ct. App. 2001).

**Reasonable Covenant**

5. The non-compete covenant at issue in the Agreement precludes Kampendahl from operating a sandwich shop within five miles of his Quizno's restaurant.[4] Recently, a federal court in Colorado addressed a similar covenant in a Quizno's Franchise Agreement that prohibited the ownership or operation of a competing branded sandwich franchise or chain restaurant at the location of the terminated Quizno's restaurant, within five miles of that site, or within five miles of another Quizno's restaurant. (*The Quizno's Corporation v. Black*, No. 01-K-2147, at 5 (D. Colo. Dec. 3, 2001) (order granting preliminary injunction), Ex. A to Plaintiff's Reply Memorandum of Law.) The court held the covenant was reasonable because Colorado courts had upheld covenants with geographical scopes far broader than that at issue in the Quizno's Agreement. (*Id.*, citing *Zeff, Farrington Assocs., Inc. v. Farrington*, 449 P.2d 813, 814 (Colo. 1969) (soil engineering business; two hundred mile restriction upheld), *I Can't Believe It's Yogurt v. Gunn*, No. CIV. A. 94-OK-2109-

---

[4] Kampendahl asserts that because his restaurant is located in a suburban area, the covenant's twenty-mile restriction is applicable and the covenant is therefore unreasonable. As noted, however, Quizno's has stated for the record that it would only seek to enforce the five-mile restriction. In light of the fact that Kampendahl is currently operating in exactly the same location as before, the precise geographical scope of the covenant's non-compete clause does not control the result on this motion.

6

TL, 1997 WL 599391, at *20 (D. Colo. April 15, 1997) (frozen yogurt business; restriction "within the Denver metropolitan market" upheld).)

6. Kampendahl argues that the broad use of the term "sandwich shop" in the covenant makes it unreasonable in scope. He contends that Quizno's has no interest in protecting against the sale of all types of sandwiches because John Montague, Fourth Earl of Sandwich–and not Quizno's–invented the sandwich. (Def.'s Sur-R., at 15.) What Quizno's does have, however, is an interest in protecting itself from former franchisees' opening sandwich shops that serve food closely resembling Quizno's sandwiches. Although the term "sandwich shop" may be less precise than it could be, the court concludes it is not unreasonable to prohibit Kampendahl from operating a sandwich shop using the same format, signage, and recipes he used as a Quizno's franchisee.

7. Because the covenant at issue here is reasonable in both duration and scope, it is valid and enforceable. Quizno's therefore has some likelihood of success on the breach of contract claim.

### Colorado Revised Statute § 8-2-113

8. Kampendahl argues that even a reasonable covenant not to compete is invalid in the state of Colorado because non-compete covenants are prohibited by § 8-2-113 of the Colorado Revised Statutes. The statute carves out two narrow exceptions that allow reasonable non-compete covenants in contracts for the purchase and sale of a business and/or contracts for the protection of trade secrets. In general, covenants not to compete are disfavored in Colorado, and the exceptions to the general rule are narrowly construed. *Gold Messenger v. McGuay*, 937 P.2d 907, 910 (Colo. Ct. App. 1997). Kampendahl notes that franchise agreements are not explicitly addressed in the statutory exceptions, and contends that this court should not read a new exception into the statute.

9. Mindful of these concerns, this court turns to judicial interpretations of the statute.

7

The only case directly addressing the question of whether under Colorado law a franchise agreement falls within the statutory purchase or sale or business exception is *I Can't Believe It's Yogurt*, an action brought by a yogurt franchisor seeking in part to enjoin terminated franchisees from continuing to sell yogurt from what had been franchise locations. In that case, the court held that a preliminary injunction for the franchisor had been properly entered. *I Can't Believe It's Yogurt*, 1997 WL 599391, at *22. The court concluded that because "the purchase of a franchise agreement is analogous to the purchase and sale of a business or the assets of a business, the purchase of a franchise is within [the statutory exemption to Colorado's public policy against non-compete covenants]" and that a reasonable non-compete covenant in a franchise agreement was therefore valid. *Id.* at *21.

10. In light of *I Can't Believe It's Yogurt*, Kampendahl seeks to distinguish the sale of an existing franchise from the creation of a new franchise agreement. Thus, Kampendahl cites *Gold Messenger* for the proposition that creating a new franchise agreement is not analogous to the sale of a business. This was not the holding of *Gold Messenger*, however; in fact, the *Gold Messenger* court only questioned a trial court's conclusion that creating a franchise agreement fit under the statutory exception before proceeding to hold that the agreement in question fit within a different statutory exception. *Id.* at 910. Kampendahl's argument also fails to adequately distinguish *I Can't Believe It's Yogurt*, where the franchise agreements held to fall within the statutory exception were newly-created and not transferred from one franchisee to another. *See I Can't Believe It's Yogurt* at **3-4 (¶ 14, ¶ 23) (describing franchise agreements between franchisor and franchisees). This court notes that Colorado law generally enforces non-competition agreements between franchisor and franchisee. *See* JOHN R. PADDOCK, JR., EMPLOYMENT LAW AND PRACTICE § 5.12 (West Colorado Practice Series 2002) ("There is no statutory restriction concerning noncompetition agreements between businesses; therefore . . . franchisors may prohibit franchisee businesses from competition.")

8

11. The court notes further that the purpose of the sale of business exception in the statute is to protect the goodwill of the business. *Nutting v. RAM Southwest, Inc.*, 106 F. Supp. 2d 1121, 1126 (D. Colo. 2000) (*citing DBA Enters., Inc. v. Findlay*, 923 P.2d 298 (Colo. Ct. App. 1996). A non-compete covenant may be similarly necessary to protect a franchisor's good will. The franchise agreement is a conveyance of the franchisor's good will to the franchisee for the length of the franchise. When the franchise terminates, the good will is transferred back to the franchisor. *See, e.g., Jiffy Lube Int'l, Inc. v. Weiss Bros., Inc.*, 834 F. Supp. 683, 691 (D. N.J. 1993). A reasonable restrictive covenant may be necessary to protect the good will of the business after the re-conveyance. *Id.* Quizno's developed a system for operating sandwich restaurants and thereby developed good will in its trademarks. Kampendahl recognized the value of this good will when he purchased the Quizno's franchise.[5] Upon termination, Kampendahl is prohibited from continuing to capitalize on the good will created by his franchisor by selling sandwiches nearly identical to those offered by Quizno's. On the facts before the court, the non-compete covenant in the Agreement works to protect good will, much like non-compete covenants in sale of business agreements. This underlying similarity further supports the conclusion that the Colorado statutory sale of business exception covers franchise agreements.

12. Kampendahl argues further that the Agreement can not be analogized to the sale of a business because the Agreement required him to act as an "independent contractor" "[i]n all matters pertaining to the operation of the Franchised Business," (Agreement ¶ 10.1), Kampendahl contends that Quizno's considered its relationship with him to be "akin to an

---

[5] Kampendahl argues that because his franchise terminated after a set period of time and because Quizno's retained some measure of good will in its franchise, the Franchise Agreement is closer to a license than to a sale of a business. This argument may not fully reflect the complexity of the Franchise Agreement, which expressly conveyed *both* "a Franchise *and* a license for the Franchised Business." (Agreement §5.1.) Even under Kampendahl's understanding of the transaction, however, it is not clear why the state interest underlying the sale of business exemption–protecting business good will–would hinge on whether the good will is conveyed through a sale or through a finite license.

9

employment situation." (Defendant's Sur-Reply in Opposition to Pl.'s Renewed Motion for Preliminary Injunction, at 11.) In fact, the language of the Agreement appears intended to convey that the Agreement creates neither a principal-agent nor a fiduciary relationship between Quizno's and franchisee- Kampendahl. *See Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 509 (S. D. Fla. 2000) (distinguishing "franchise/franchisee or independent contractor relationship" from fiduciary one); *Perry v. Burger King Corp.*, 924 F. Supp. 548, 553 (S. D. N.Y. 1996) (granting summary judgment in civil rights case to fast food franchisor in part because Franchise Agreement identified franchisee as independent contractor).[6] In any event, this argument has no bearing on whether the non-compete covenant in the Agreement was protects Quizno's good will and thus puts the Agreement within the exception.

13. In addition, Quizno's argues that the Agreement at issue falls into the second statutory exception, which permits non-compete covenants in contracts for the protection of trade secrets. Colorado courts have held that a franchise agreement can be viewed as a contract for the protection of trade secrets. *Gold Messenger*, 937 P.2d 910. Under this reasoning, a franchise non-compete covenant may fit into the statutory trade secret exception if the covenant has the purpose of protecting trade secrets, and a scope reasonably limited to the protection of those trade secrets. *Id.* Kampendahl acknowledged in the Agreement that anything revealed to him by Quizno's–including the Operations Manual as well as Quizno's system in its entirety–constituted trade secrets. (Franchise Agreement §5.1.) The non-compete covenant, which prohibits only the

---

[6] Kampendahl cites Paddock's Colorado employment law treatise for the premise that § 8-2-113's "voiding of noncompetition contracts with individuals as opposed to entities, includes individuals who are independent contractors." Paddock, at § 5.12. Notably, however, the lone case cited in support of this proposition, *Colorado Supply Co., Inc. v. Stewart*, 797 P.2d 1303 (Colo. Ct. App. 1990), does not address a franchise agreement. Because the *I Can't Believe It's Yogurt* court declined to void a franchise agreement where the franchisees were individuals (and possibly independent contractors as well), this court concludes that Colorado does not as a matter of law void noncompete contractual clauses with individual franchisees, whether they are independent contractors or not.

10

operation of a sandwich shop within a narrow geographical area, has the legitimate purpose of protecting Quizno's trade secret in the Quizno's system and in the production of Quizno's sandwiches. It appears from the court's reading of the covenant that it is designed to stop an "imitation Quizno's" from operating after the termination of the Agreement, much as Kampendahl appears to be doing.

14. Kampendahl argues that he is not violating any trade secret of Quizno's because information that is known generally through observation or may be developed through means available to the public is not a secret. He then contends that making a sandwich is too simple a notion to constitute a trade secret. In this court's view, Kampendahl's construction of the Quizno's secret is excessively narrow. Kampendahl is not merely making sandwiches; it appears he is using recipes, menus, signs, and ovens initially approved as part of a Quizno's business strategy. Moreover, Kampendahl acknowledged in the Agreement that the Quizno's system constituted a trade secret. A court might well conclude that the Franchise Agreement and non-compete covenant fit under the statutory trade secrets exception.

15. Because the non-compete covenant arguably fits into both exceptions to § 8-2-113, the statute does not bar the non-compete covenant that Quizno's seeks to enforce in this action. Accordingly, the court concludes that Quizno's maintains a likelihood of success of the merits of the claim.

**Irreparable Injury**

16. Having established a breach of a valid non-compete agreement, Quizno's is entitled to a presumption that irreparable injury will result. Colorado courts have said "[w]here there is a non-competition agreement, breach is the controlling factor and injunctive relief follows almost as a matter of course. Damage is presumed to be irreparable and the remedy at law is considered inadequate." *I Can't Believe It's Yogurt,* 1997 WL 599391, at *20 (quoting *Miller v. Kendall,* 541

11

P.2d 126, 127 (Colo. Ct. App. 1975)). *See also Economou v. Physicians Weight Loss Ctrs of Am.*, 756 F. Supp. 1024, 1038-39 (N.D. Ohio 1991) (noting potential irreparable harm to franchisor in course of granting preliminary injunction to enforce non-compete covenant in franchise agreement).

17. Quizno's has also asserted that because Kampendahl operated the location currently used for Bob's Deli as a Quizno's for five years, the location became associated with Quizno's. Quizno's argues that enforcement of the non-compete covenant is essential to allow time for the public to stop associating Kampendahl's restaurant with Quizno's. Moreover, Quizno's asserts it will not be able to reenter the market as long as Bob's Deli is in operation and will therefore lose sales, goodwill, and market presence it once had in the area.

18. Finally, Quizno's argues that Kampendahl's conduct threatens the Quizno's franchise system as a whole. Kampendahl's willful violation of the Agreement sends a message to other franchisees that the Agreement does not protect Quizno's and may be disregarded at will.

19. Because of the presumption of irreparable harm, Quizno's inability to reenter the market, and the threat to the franchise system as a whole, this court finds that there is no adequate remedy at law and Quizno's will suffer irreparable harm if the preliminary injunction is not granted.

**Balancing of the Equities**

20. The balance of the equities favors Quizno's. Because of his history as a Quizno's franchisee, Kampendahl will be in a position to benefit from the access, training, and know-how provided him to do significant harm to the company by attracting Quizno's existing and potential customers.

21. Any harm caused to Kampendahl by the preliminary injunction derives entirely from his breach of the Franchise Agreement and "[c]ourts are generally unsympathetic to franchisees who blatantly disregard covenants not to compete." *I Can't Believe It's Yogurt*, 1997 WL 599391 at *20 (*citing Gold v. Holiday Rent-A-Car International*, 627 F. Supp. 280 (W.D. Mo. 1985)).

Furthermore, although Kampendahl claims that the location of Bob's Deli is suited solely for a sandwich shop and enforcement of the covenant will hinder his ability to earn a livelihood, he provides no support for this assertion. This court finds no reason why a restaurant of more than 1200 square feet cannot be used to sell non-sandwich food products in compliance with the covenant not to compete.

**The Public Interest**

22. The public interest will not be disserved by the entry of a preliminary injunction. On the contrary, there is a benefit to the enforcement of a valid covenant not to compete and encouraging people to adhere to contractual obligations. *I Can't Believe It's Yogurt* 1997 WL 599391, at *20 (finding the public interest especially served in the enforcement of a covenant not to compete in the franchise context.)

## CONCLUSION

For the reasons stated above, Plaintiff's preliminary injunction (Doc. No. 15-1) is granted. Kampendahl is preliminarily enjoined from operating a sandwich shop similar to Quizno's, including Bob's Deli, within five miles of his terminated Quizno's location in St. Charles, Illinois.

ENTER:

Dated: May 20, 2002

REBECCA R. PALLMEYER
United States District Judge

13